IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEMETRIUS E. SAUNDERS and RYAN E. SAUNDERS<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN WAREHOUSING SERVICES, INC. and THE GILLETTE COMPANY<br><br>Defendants. | Case No. 04 C 7455 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Demetrius Saunders and Ryan Saunders have sued their former employers American Warehousing Services, Inc. and the Gillette Company for race discrimination in violation of 42 U.S.C. § 1981 and both race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2 & e-3. With regard to the section 1981 claim, the plaintiffs have moved to certify a class and a subclass pursuant to Federal Rule of Civil Procedure 23. For the reasons stated below, the Court denies the plaintiffs' motion without prejudice.

**Factual background**

Gillette leases a warehouse in Romeoville, Illinois to store its products until they are shipped to customers. AWS coordinates receiving and shipping operations for Gillette at the warehouse. Def. Ex. A (Tomaino Dep.) at 6-7, 14-15. Demetrius and Ryan, who are brothers, both worked as pickers at the warehouse, a position which required moving and stacking pallets

1

of product using motorized carts. Ryan began working as a picker in September 1999. Demetrius began working as a picker in March 2000, and he became a lead picker in June 2001. The defendants fired Demetrius in October 2002 and Ryan in April 2003. Def. Ex. F (D. Saunders Dep.) at 40, 72, 80; Def. Ex. G (R. Saunders Dep.) at 23-27, 58.

The plaintiffs have filed individual claims for employment discrimination and retaliatory discharge under Title VII. At issue in this motion for class certification, however, is plaintiffs' claim under section 1981 that the defendants engaged in a pattern and practice of discrimination against African-American employees by allowing racist grafitti within the warehouse, condoning racist remarks by Caucasians, limiting African-Americans' use of certain warehouse facilities, including bathrooms and parking lots, and discriminating against African-Americans with regard to duties, discipline, and promotions.

The plaintiffs have moved the Court to certify two classes: a class consisting of all past, current, and future African-American employees on or after March 31, 2001 and a subclass of all African-American male employees who were prohibited from using the restrooms located near the warehouse's shipping office. The plaintiffs approximate that the full class includes between fifty and sixty individuals; they do not indicate the number of individuals in the subclass. They seek compensatory and punitive damages and injunctive relief.

**Discussion**

Rule 23 of the Federal Rules of Civil Procedure authorizes a court to certify a case as a class action if the party seeking certification meets all of the requirements of Rule 23(a) and one of the requirements of Rule 23(b). Rule 23(a) requires that

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the

2

> representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED R. CIV. P. 23(a). Once a party satisfies the requirements of Rule 23(a), he must meet one of the requirements enumerated in Rule 23(b): individual actions would create substantial prejudice to the plaintiffs or the defendants; the defendants are subject to equitable relief applicable to the entire class; or legal and factual questions common to the class predominate, making a class action the superior method for resolving the dispute. "The party seeking class certification assumes the burden of demonstrating that certification is appropriate." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

### A. Rule 23(a) requirements

Rule 23(a)(1) requires that a class be so numerous that joinder of all its members is not feasible. The party moving for class certification "cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity." *Roe v. Highland*, 909 F.2d 1097, 1100 n. 4 (7th Cir. 1990) (citations omitted).

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). A common set of operative facts is usually present when the defendants have engaged in "standardized conduct toward the members of the proposed class." *Id.*

Rule 23(a)(3)'s typicality inquiry is closely related to Rule 23(a)(2)'s commonality inquiry. *See Rosario*, 963 F.2d at 1018. The typicality requirement focuses on "whether the named representatives' claims have the same essential characteristics as the claims of the class at

large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993). Factual distinctions between the claims of the named and represented plaintiffs do not defeat typicality. *See id.* For example, all members of the proposed class need not have suffered the same injury, *see Rosario*, 963 F.2d at 1018, nor need they be subject to the same defenses. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). The Seventh Circuit has made it clear, however, that the claims of the named plaintiffs must have "the same essential characteristics" as those of the proposed class. *See Retired Chi. Police Ass'n*, 7 F.3d at 596-97.

Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent the class. There are two aspects of this requirement: both class counsel and the class representatives must be adequate. *Retired Chi. Police Ass'n*, 7 F.3d at 598. The defendants do not dispute the adequacy of plaintiffs' counsel, but they do challenge Demetrius and Ryan's adequacy as class representatives. A named plaintiff is generally deemed adequate so long as his claims neither conflict with nor are antagonistic to those of other class members. *See id.*

The plaintiffs contend that they have satisfied each of Rule 23(a)'s requirements for the class and subclass. The defendants respond that the plaintiffs cannot satisfy the requirements of Rule 23(a) with regard to the class. They do not attack the subclass specifically; instead, they appear to argue that because the class does not satisfy Rule 23(a), the subclass does not either. For this reason, the Court focuses its discussion on whether the putative class as a whole meets the requirements of Rule 23(a).

To establish numerosity, the plaintiffs have submitted a list of the sixty-five African-American employees hired by the defendants between January 1, 2000 and April 24, 2003. Pl. Ex. 44. They concede that this list does not include all of the African-American employees in the prospective class, specifically those who were hired before January 1, 2000 or after April 24,

4

2003 but who nonetheless worked at the warehouse after March 21, 2001. Based on this information, they contend that at the very least, the prospective class comprises between fifty and sixty past, current, and future African-American employees.

The defendants argue that plaintiffs' evidence of numerosity is insufficient because they have established only the number of African-American employees who worked at the warehouse during the relevant time period, not the subset of those employees who were aggrieved by the practices alleged in the complaint. *See Harper v. ULTA Salon Cosmetics & Fragrance, Inc.*, No. Civ.A.1:05CV1285-TWT, 2005 WL 3542482, at *2 (N.D. Ga. Dec. 23, 2005). The Court disagrees. The plaintiffs claim that the defendants have condoned behavior that would have affected all of the African-American employees at the warehouse, including racist grafitti, racist comments, segregation of warehouse facilities, and disparate discipline. The Court finds that the plaintiffs have satisfied the numerosity requirement.

Without much in the way of analysis, the plaintiffs state that the legal claims and factual allegations contained in the complaint meet the commonality requirement. The defendants do not dispute that the putative class members share the same legal theory, but they contend that there are significant factual differences with regard to their claims.

The Court agrees with the plaintiffs in part and with the defendants in part. The plaintiffs have submitted the statements of several former employees regarding discriminatory practices at the warehouse through April 2003. *See generally*, Def. Ex. F (D. Saunders Dep.) (last worked October 2002); Def. Ex. G (R. Saunders Dep.) (last worked April 2003); *see also* Def. Ex. J (Daniels Dep.) at 29 (last worked October 2001); Def. Ex. M (Bradley Dep.) at 21-22 (last worked December 2001); Def. Ex. N (House Dep.) at 23-24 (last worked June 2000); Pl. Ex. 42 (Shorty Decl.) ¶ 2 (last worked late July or early August 2002); Pl. Ex. 43 (Neely Decl.) ¶ 1 (last

5

worked July 2002); Pl. Ex. 45 (McAfee Decl.) ¶ 2 (last worked April 2001); Pl. Exs. 34-41 (EEOC Complaints regarding incidents up to January 2002). Even after one year of discovery, however, the plaintiffs apparently have been unable to gather any evidence regarding ongoing harassment or discrimination at the warehouse. The defendants have produced declarations from twenty current employees who are members of the proposed class, five of whom began working at the warehouse after April 2003. Though these declarations are not determinative, the Court notes that these current employees uniformly deny being subject to the discrimination alleged by the defendants. *See* Def. Ex. I (Bradley Decl. ¶¶ 2, 4, 6-8; Brewer Decl. ¶¶ 3, 6, 8-11; Harris Decl. ¶¶ 1-2, 4-7; Hatcher Decl. ¶¶ 1-2, 4-7, Holmes Decl. ¶¶ 1, 7-10; McElrath Decl. ¶¶ 1, 5-10; Clark Decl. ¶¶ 2-8; Collins Decl. ¶¶ 3, 5-11; Embrey Decl. ¶¶ 2, 7-12; Green Decl. ¶¶ 9-16; Hill ¶¶ 1-2, 6-10; Randy Jones Decl. ¶¶1-2, 7-11; Rick Jones ¶¶ 1-2, 5-10; Lincoln Decl. ¶¶ 1-2, 4-9; Moncrief Decl. ¶¶ 5-10; Norris Decl. ¶¶ 1-3, 4-8; Simmons Decl. ¶¶ 1-2, 4-9; Sepney Decl. ¶¶ 1-9; E. Williams Decl. ¶¶ 1-8; T. Williams Decl. ¶¶ 1-9).

Without any evidence of discrimination that postdates April 2003, the Court cannot say that there exist questions of law or fact that are common to the entire putative class. For this reason, the Court concludes that commonality exists only among those African-American employees who worked at the warehouse from March 21, 2001 through April 2003.

With little discussion, the plaintiffs contend that their claims are typical of members of the putative class. The defendants argue that the plaintiffs' claims are not typical because they are weak and subject to unique defenses.[1] The Court disagrees.

---

1 The defendants present this argument as one regarding Demetrius and Ryan's adequacy as named plaintiffs. The Court believes it is more appropriately analyzed as a challenge to the typicality of their claims.

The defendants argue that Demetrius' claims are atypical because he did not suffer every form of mistreatment alleged in the complaint. During his deposition, Demetrius stated that he observed racist grafitti, was subjected to racial slurs, was not allowed to use the men's restrooms near the shipping office, and was demoted because Ryan had filed an EEOC complaint. *See* Def. Ex. F (D. Saunders Dep.) at 108, 137-154, 164-200. The defendants point out, however, that Demetrius was allowed to use any non-reserved space in the parking lot and was not subject to disparate discipline.

A named plaintiff's claims are not atypical simply because there are "factual distinctions between ... [his claims] and those of other class members." *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). In this case, the fact that Demetrius did not experience "particular *kinds* of the numerous varieties of harassing conduct of which the class complains" does not diminish the fact he shares a "common essential claim" that the defendants engaged in a pattern and practice of discrimination at the warehouse from 2001 to 2003. *See Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 660 (N.D. Ill. 2006) (emphasis in original). The Court therefore finds that Demetrius' claims are typical.

Ryan's situation is more difficult. Like his brother, Ryan testified that he suffered many of the injuries alleged in the complaint: seeing racist grafitti, hearing racial slurs, being prohibited from using one of the restrooms, and receiving fewer job duties and more severe punishment than Caucasian employees. The defendants initially argue that Ryan's allegations of discrimination do not rise to the level of actionable harassment, but that argument, which goes to the merits of the case, is misplaced on a motion for class certification. *See Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002).

The defendants' primary argument is that Ryan's claims are subject to unique defenses

and are therefore atypical. *See Hardy v. City Optical Inc.*, 39 F.3d 765, 771 (7th Cir. 1994) (citing *Koos v. First Nat'l Bank*, 496 F.2d 1162, 1164-65 (7th Cir. 1974)). The defendants have alleged that Ryan created some of the racist grafitti at issue and that as result, he will have to expend great effort disputing these accusations, rather than focusing on representing the interests of the class as a whole. *See Koos*, 496 F.2d at 1164 (noting that a named plaintiff is atypical if "a major focus of the litigation will be on an arguable defense unique to [him] or a small subclass").

It is possible that Ryan's claims ultimately may prove to be atypical. At this juncture, however, the Court cannot so find; Ryan's claims are, in fact, the same as those of the class. Though defendants may need to conduct discovery concerning whether Ryan actually created some of the racist grafitti, the Court has been given no basis to believe that this inquiry will hijack the discovery process. If that comes to pass, the Court will not hesitate to revisit this issue. *See Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) ("If the certification of the class is later deemed to be improvident, the court may decertify.").

Finally, the plaintiffs contend that they are adequate class representatives and that their attorneys are adequate class counsel. The defendants do not dispute the adequacy of plaintiffs' counsel, but they challenge the adequacy of the plaintiffs as class representatives. Specifically, the defendants cite conflicts between the plaintiffs and the putative class members – namely, the defendants' current employees – to demonstrate that the plaintiffs are inadequate representatives.

"The court may properly consider the views of putative class members on the question whether a self-proclaimed class representative can adequately protect their interests." *McNichols v. Loeb Rhoades & Co.*, 97 F.R.D. 331, 344 (N.D. Ill. 1982) (citing *Shulman v.*

*Ritzenberg*, 47 F.R.D. 202, 207-08 (D.D.C. 1969)). In *Shulman*, the court faced a similar situation in which a plaintiff moved for class certification, but several putative class members filed affidavits opposing the motion. The putative class members stated that they did not believe the plaintiff's interests were consistent with their own or that the plaintiff would fairly and adequately protect their interests. Based on these affidavits, the Court concluded that the named plaintiff's interests were antagonistic to or in conflict with the majority of the putative class members and that he was not suited to be a class representative. *Shulman*, 47 F.R.D. at 207-09.

Five of the current employees at the warehouse have expressed concerns about Demetrius and Ryan representing them. Three employees claim that Demetrius abused his power as a lead picker and threatened other employees. *See* Def. Ex. I (Brewer Decl. ¶ 14; Hill Decl. ¶ 16; Stepney Decl. ¶ 10). One of these same employees and two others assert that both plaintiffs' claims are false and that they are pursuing this case for monetary gain. *See id.* (Collins Decl. ¶¶ 13-14; Hatcher Decl. ¶¶ 9-10; Hill Decl. ¶ 16). Based on their experiences with the plaintiffs, all five of these employees state that they did not want Demetrius or Ryan to represent them. *See id.* (Brewer Decl. ¶ 14; Collins Decl. ¶¶ 13-14; Hatcher Decl. ¶¶ 9-10; Hill Decl. ¶ 16; Stepney Decl. ¶ 10).

The plaintiffs respond that the defendants are overstating any potential conflict among the putative class members. The Court agrees. Though we do not take the concerns of the putative class members lightly, we note that in contrast to *Shulman*, where a significant majority of the putative class members believed that the named plaintiffs were inadequate representatives, only five current warehouse employees challenge Demetrius and Ryan's adequacy. Moreover, as the Court discusses below, if we ultimately certify a class in this case, it will be under Rule 23(b)(3), which gives class members the opportunity to opt out from the class.

For these reasons, the Court finds that the plaintiffs have satisfied the requirements of Rule 23(a) for those current and former African-American employees of the warehouse who worked there between March 21, 2001 and April 23, 2003. The Court also finds that the plaintiffs have satisfied Rule 23(a)'s requirements for the subclass of male African-American employees who allegedly were not allowed to use the restroom near the shipping office.

B.    Rule 23(b) requirements

Once a party satisfies the requirements of Rule 23(a), he must meet one of the requirements outlined in Rule 23(b) before a class may be certified: individual actions would create substantial prejudice to the defendants or the putative class members; the defendants are subject to equitable relief applicable to the entire class; or legal and factual questions common to the class predominate, making a class action the superior method for resolving the dispute. The plaintiffs cannot obtain class certification under Rule 23(b)(1) because they have not attempted to show that individual adjudications would significantly prejudice the defendants or the members of the putative class.

The plaintiffs argue that certification under Rule 23(b)(2) is appropriate to the extent they are seeking an injunction. The defendants contend that the plaintiffs lack standing to seek prospective relief; the plaintiffs respond that the defendants' challenge to standing is actually a guise for an untenable contention of mootness. Upon closer examination of the defendants' argument, the Court believes that they are challenging jurisdiction on the basis of both mootness and standing. We address each of these points in turn.

The defendants essentially argue that the plaintiffs' claim for injunctive relief is moot because any alleged discriminatory conduct has ceased. Voluntary cessation of allegedly illegal

conduct does not render a case moot unless the defendant can demonstrate that "'there is no reasonable expectation that the wrong will be repeated.'" *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953) (quoting *United States v. Aluminum Co.*, 148 F.2d 416, 448 (2d Cir. 1953)). The burden is a heavy one, *id.*, and the defendants have not met it here. The defendants have offered declarations from current employees attesting that they are not currently experiencing discriminatory treatment at the warehouse. Because, however, there is nothing stopping the defendants from allowing discriminatory practices to resume at the warehouse, the plaintiffs' claim for injunctive relief is not moot. *See Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998).

The defendants have also challenged the plaintiffs' standing to seek injunctive relief on behalf of the putative class. Class certification is "logically antecedent" to a determination regarding standing, but courts must nonetheless be mindful that the potential for class certification does not allow circumvention of the standing requirements of Article III of the Constitution. *See Ortiz v. Fireboard Corp.*, 527 U.S. 815, 830-31 (1999); *Payton*, 308 F.3d at 680. One of the named plaintiffs in a putative class action must have standing to obtain each of the forms of relief sought by the class as a whole. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975). The question in this case is whether either Demetrius or Ryan, who no longer work at the warehouse, have standing to obtain injunctive relief on behalf of themselves or the putative class. The plaintiffs do not dispute that Ryan lacks standing to seek prospective relief on behalf of himself or a class, but they maintain that because Demetrius is seeking reinstatement, he is entitled to seek an injunction prohibiting the defendants from engaging in a pattern or practice of discrimination in the future.

To establish standing for prospective relief, Demetrius must show that there is a "real and

immediate threat" that the defendants will violate his rights. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In *Lyons*, the plaintiff, who had previously been subjected to a chokehold, sued the City of Los Angeles to stop the use of this technique against criminal suspects who posed no bodily danger to anyone. *Id.* at 97-98. During the course of the litigation, the city placed a moratorium on the practice. The Court found that the case was not moot because the city could reinstate the practice at any time but nonetheless concluded that the plaintiff lacked standing to obtain injunctive relief. *Id.* at 101-02. Specifically, the plaintiff's "'[p]ast exposure to illegal conduct [did] not in itself show a present case or controversy regarding injunctive relief'" without a showing of "'continuing, present adverse effects.'" *Id.* at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Without a showing that the police would likely arrest him again and subject him to a chokehold, the plaintiff lacked standing to seek injunctive relief to prevent future violations of his rights. *Id*.

Former employees normally do not have standing to obtain injunctive relief because they face no threat of future harm. *See Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 666 (N.D. Ill. 2006); *Hawkins v. Groot Indus., Inc.*, No. 01 C 1731, 2003 WL 22057238, at * 2 (N.D. Ill. Sept. 2, 2003). A former employee who seeks reinstatement may be entitled to prospective relief because he faces the possibility of returning to his employer and experiencing discriminatory treatment. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 n. 3 (5th Cir. 1996) (finding that former employee lacked standing to seek injunctive relief primarily because he was not seeking reinstatement). In this case, however, even if Demetrius were reinstated, there is no evidence that he would face a "real and immediate threat" that the defendants would continue to violate his rights. *See Lyons*, 461 U.S. at 111. As we discussed earlier with regard to commonality, there is no indication – even after one year of discovery regarding class

certification – that any of the discriminatory practices that allegedly occurred while Demetrius and Ryan worked at the warehouse have continued. For this reason, the Court finds that Demetrius does not have standing to sue for injunctive relief either on behalf of himself or the putative class. The Court therefore cannot certify the class under Rule 23(b)(2).[2]

Rule 23(b)(3) is the only remaining basis for class certification. It requires a party seeking class certification to establish that questions of law and fact common to the members of the class predominate and that a class action is superior to other methods for adjudicating the dispute. Several matters are relevant to the Rule 23(b)(3) inquiry, including "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action." FED. R. CIV. P. 23(b)(3).

The plaintiffs have made no real effort to show how they satisfy the requirements of Rule 23(b)(3). In fact, the plaintiffs did not even mention Rule 23(b)(3) until their reply, where they conceded that their claims for monetary damages could be certified only under Rule 23(b)(3) but failed to provide any argument as to why they satisfied that Rule's predominance and superiority requirements. For this reason, the Court denies the plaintiffs' motion for class certification, but we do so without prejudice to renewal if they believe they can satisfy Rule 23(b)(3)'s

---

2 Though one might perceive a contradiction between our conclusion that Demetrius' request for injunctive relief is not moot and our determination that he lacks standing to obtain such relief, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000).

requirements.

## Conclusion

The Court denies without prejudice the plaintiffs' motion for class certification [docket no. 22] for the reasons stated above. The case is set for a status hearing on September 29, 2006 at 9:30 a.m.

                                                                    MATTHEW F. KENNELLY

Date: September 13, 2006                                       United States District Judge